J-A26022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: A.E.J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.R.J., FATHER | : : : : : : : | |
| | : | No. 745 WDA 2024 |

Appeal from the Decree Entered May 21, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
30 in Adoption 2024

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                FILED:  **February 3, 2025**

A.R.J. ("Father") appeals from the decree entered by the Erie County Orphans' Court ("orphans' court") involuntarily terminating his parental rights to A.E.J., born in June 2022.  This case returns to us following remand after Father's appointed counsel, Attorney Patrick W. Kelley, failed to comply with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), in his initial petition to withdraw as counsel and letter advising Father of his rights under **Anders**/**Santiago**. Attorney Kelley has now filed an amended petition to withdraw and letter properly advising Father of his rights under **Anders**/**Santiago**.  Upon review, we grant Attorney Kelley's petition to withdraw and affirm the decree terminating Father's parental right to A.E.J.

On January 18, 2023, the orphans' court removed A.E.J. from the care of C.E.J. ("Mother") on the basis that A.E.J. was without proper care or control after the Erie County Office of Children and Youth ("OCY") discovered Mother using illegal drugs in A.E.J.'s presence and leaving drug paraphernalia within A.E.J.'s reach. Dependency Petition, 1/23/2023, at 3-4.[1] At that time, Father, who has a long criminal history, was incarcerated with pending charges and thus unable to care for A.E.J. *Id.* at 4; *see also* N.T., 5/21/2024, Exhibit 8.

The orphans' court held an adjudication hearing on January 31, 2023, at which Father was present. Order of Adjudication, 2/6/2023, at 1. Father stipulated to the following allegations in the dependency petition:

(a) [Father] has not been in a caregiving role for the child. He is currently incarcerated at the Erie County Prison and is unable to care for the child;

(b) [Father] has a history of mental health diagnoses, including reaction to severe stress and adjustment disorder, episodic mood disorder, and cannabis related disorders/cannabis dependence. It is not known if [Father] is receiving any mental health treatment;

(c) [Father] has a history of substance abuse. It is not known if he is treating for substance abuse; and

(d) [Father] has a criminal history, including possession of small amount of marijuana for personal use, theft by unlawful taking, workers' compensation insurance fraud, and false identification to law enforcement. [Father] has pending criminal charges for possession with intent to deliver (4 counts), possession of a controlled substance (11 counts), possession of small amount of marijuana for personal use, possession of drug paraphernalia,

---

[1] At the termination hearing, the orphans' court admitted into evidence the dependency docket and its relevant filings as Exhibits 1 through 9. *See* N.T., 5/21/2024, at 4, Exhibits 1-9.

possession of firearms prohibited, firearms not to be carried without a license, possession of instrument of crime, tampering with physical evidence, and simple assault.

Dependency Petition, 1/23/2023, at 3-4 (typographical errors corrected; unnecessary capitalization omitted).

On February 6, 2023, the orphans' court adjudicated A.E.J. dependent with the permanency goal of reunification. *Id.* at 1-2. Father agreed to the following treatment plan:

1. Submit to genetic testing to establish paternity;

2. While incarcerated, avail himself of any appropriate services or treatment and follow recommendations.

Once released from incarceration:

3. Refrain from the use of drugs and alcohol and participate in random urinalysis screens through the color code program at Esper Treatment Center;

4. Participate in a drug and alcohol assessment through Erie County Office of Drug and Alcohol and follow all recommendations;

5. Participate in a mental health evaluation and follow all recommendations;

6. Demonstrate the ability to maintain safe and stable housing, with working utilities, safe home conditions, and safe individuals in the home;

7. Obtain and/or maintain employment or other source of income to ensure the needs of the child can be met;

8. Participate in an agency approved parenting program and demonstrate the ability to understand the child's medical, dental, and educational needs, while also understanding physical and emotional needs, and;

9. Attend the child's medical appointments and follow all recommendations. Participate in an Early Intervention evaluation and follow through with services if child qualifies.

Order of Adjudication, 2/6/2023, at 3-4.

On March 9, 2023, Father pled guilty to one count of persons not to possess firearms and two counts of possession with the intent to deliver a controlled substance. N.T., 5/21/2024, Exhibit 8. On April 27, 2023, he received an aggregate sentence of six to twelve years in prison.

During the March 5, 2024 permanency review hearing, OCY requested that the orphans' court change A.E.J.'s permanency goal to adoption. Court Summary, 3/5/2024, at 14. OCY indicated that Mother continued to struggle with substance use and mental health disorders and had expressed her desire to voluntarily relinquish her parental rights. *Id.* OCY further asserted that Father would remain incarcerated, at a minimum, for the next several years and thus would be unable to achieve reunification in a timely fashion. *Id.* The next day, the orphans' court changed A.E.J.'s permanency goal to adoption. Permanency Review Order, 3/6/2024.

On March 13, 2024, OCY filed a petition to involuntarily terminate Father's rights to A.E.J. On May 21, 2024, the orphans' court held a hearing on the termination petition for which Father was present and testified. The same day, the orphans' court issued a decree involuntarily terminating Father's parental rights to A.E.J. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and finding, pursuant to 23 Pa.C.S. § 2511(b), that termination

best served the developmental, physical, and emotional needs and welfare of A.E.J.[2]

Father timely appealed and Attorney Kelley simultaneously filed a notice of his intention to withdraw pursuant to **Anders**/**Santiago**. **See** Pa.R.A.P. 1925(a)(2)(i), (c)(4). The orphans' court subsequently filed a Pa.R.A.P. 1925(a) opinion.

When an **Anders**/**Santiago** brief is before this Court, we may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders**/**Santiago** procedure for court-appointed counsel seeking to withdraw has been extended to appeals involving termination of parental rights).

To withdraw pursuant to **Anders**, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous[.]" **In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citation omitted). Additionally, counsel must file an **Anders** brief that satisfies the following criteria:

> (1) provide a summary of the procedural history and facts, with citations to the record;

---

[2] By the same decree, the orphans' court also terminated Mother's parental rights to A.E.J.

- 5 -

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*B.G.S.*, 240 A.3d at 661 (quoting *Santiago*, 978 A.2d at 361).

Finally, counsel also must provide a copy of the *Anders* brief to the client, along with a letter that advises his client of the immediate right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *In re X.J.*, 105 A.3d 1, 4 (Pa. Super. 2014) (citation and brackets omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Id.* Our independent review is not limited to the issues that counsel discussed in the *Anders* brief, but extends to "additional, non-frivolous issues" that counsel may have overlooked. *J.D.H.*, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." *Santiago*, 978 A.2d at 356 (citation omitted).

We conclude that Attorney Kelley's petition to withdraw and *Anders* brief comply with the requirements outlined above. Counsel has filed a

petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. ***See*** Petition for Leave to Withdraw as Counsel, 9/3/2024. In conformance with ***Santiago***, Attorney Kelley's brief includes summaries of the facts and procedural history of the case and discusses the issues he believes might arguably support Father's appeal. ***See Anders*** Brief at 8-20. Attorney Kelley's brief further sets forth his conclusion that the appeal is frivolous and includes discussion of and citation to relevant authority in support of his conclusion. ***Id.*** at 11-20.

On December 23, 2024, Attorney Kelley filed an amended petition to withdraw with this Court and attached to the petition the amended letter he sent to Father that fully informed Father of his immediate right to privately retain new counsel, proceed pro se, or raise any additional points he deems worthy of this Court's attention.[3] ***See*** Amended Petition to Withdraw, 12/23/2024. Because Attorney Kelley has now complied with the procedural

___

[3] As noted above, we initially determined that Attorney Kelley's letter to Father was defective as it failed to inform him that he had the immediate right to retain new counsel, proceed pro se, or raise any issues he deems worthy of this Court's attention in addition to the points Attorney Kelley raised in the ***Anders*** brief. ***See*** Letter, 9/3/2024. We denied Attorney Kelley's petition to withdraw and directed Attorney Kelley to file an amended petition to withdraw with this Court within ten days of the filing date of this decision and attach to the petition the amended letter he sent to Father that fully informed Father of his rights. We also permitted Father twenty days to raise additional issues, either through privately retained counsel or pro se, following the filing of Attorney Kelley's amended petition to withdraw and amended letter. Father did submit any additional filings to this Court.

requirements for withdrawing from representation, we turn our attention to the issues he raised in the ***Anders*** brief:

> 1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that [OCY] established sufficient grounds for termination under 23 Pa.C.S.[] § 2511[(a)]?
>
> 2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that termination of [Father]'s parental rights was in [A.E.J.]'s best interests under section 2511(b)?

***Anders*** Brief at 7 (unnecessary capitalization omitted).

Father challenges the termination of his parental rights. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

***In re Adoption of C.M.***, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. ***See id.*** at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." ***In re C.M.K.***, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Father's rights to A.E.J. pursuant to subsections (1), (2), (5), and (8) of section 2511(a). Orphans' Court Opinion, 7/17/2024, at 1. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." ***In re J.F.M.***, 71 A.3d 989, 992 (Pa. Super.

2013). We focus our analysis on subsection (a)(2), which provides as grounds for termination of a parent's rights:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Father argues that the orphans' court abused its discretion by terminating his parental rights pursuant to section 2511(a)(2). Father's Brief at 14-15. He asserts that OCY failed to prove that his repeated incapacity or neglect caused A.E.J. to be without essential parental care and that he has not and cannot remedy the conditions that caused A.E.J. to be without essential parental care. *Id.*

As this Court has explained, termination of a parent's rights pursuant to section 2511(a)(2) requires that the petitioner show, by clear and convincing evidence, that the parent is presently unable to care for the child and will not be able to care for him for the foreseeable future. *Int. of A.R.*, 311 A.3d 1105, 1112 (Pa. Super. 2023).

> A child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. When a parent has demonstrated a continued inability to conduct her life in a manner conducive to providing a safe environment for a child, and the behavior is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

- 10 -

*Id.* at 1111.

The orphans' court provided the following explanation for its decision to terminate Father's parental rights:

> In the instant case, the record demonstrates by clear and convincing evidence that the termination of [Father]'s parental rights was proper, as [Father], through his own actions and the consequences of those actions, has made it impossible for him to alleviate the conditions that led A.E.J.'s removal in the fourteen (14) months leading up to [OCY's petition]. In fact, at the time of A.E.J.'s removal from [Mother]'s care at six (6) months old, [Father] had never even met her due to his incarceration prior to her birth. Further, [Father] testified it will be another three (3) years and ten (10) months before he is even up for parole, at which time A.E.J. would be almost six (6) years old. Such a delay to A.E.J.'s permanency, on the chance [Father] were to be paroled at his minimum sentence, would be unconscionable and certainly not in her best interest.

Orphans' Court Opinion, 7/17/2024, at 7.

The record reflects that A.E.J. was removed from Mother's care because Mother was using controlled substances, Mother kept drug paraphernalia within A.E.J.'s reach, and medical neglect. N.T., 5/21/2024, at 7. Father, however, was incarcerated and has been in prison since before A.E.J.'s birth. *Id.* Consequently, Father's goals when A.E.J. was adjudicated dependent were, while incarcerated, to participate in drug and alcohol and mental health evaluations, and follow any treatment recommendations. *Id.*; *see also* Order of Adjudication, 2/6/2023, at 3-4. Following his release from prison, Father was to continue following his drug and alcohol and mental health treatment recommendations, demonstrate the ability to maintain safe and stable housing, obtain and maintain employment, participate in an OCY-approved

parenting program, and attend A.E.J.'s medical appointments. *See* Order of Adjudication, 2/6/2023, at 3-4.

The record further reflects, however, Father has made no progress towards achieving any of his goals. *See* N.T., 5/21/2024, at 9-25. Mary Pristello ("Pristello"), A.E.J.'s OCY caseworker, testified that OCY had not received any evidence that Father has made even minimal progress towards his goals throughout the entirety of the dependency proceedings. *Id.* at 9-10, 13-14, 16-17, 21. Pristello further testified that OCY had not received any documentation that Father has participated in any drug and alcohol or mental health treatment while in prison. *See id.* Despite evidence that a large portion of his criminal history involved drug convictions, Father testified that he does not need any drug and alcohol treatment because he is a seller and not user. *Id.* at 14, 36. While Father did testify that he owned his own home and was a member of the cement finishers union, and thus would likely be able to provide stable housing and obtain employment after his release, Father also pled guilty to additional crimes after A.E.J. was adjudicated dependent and indicated that he has nearly four years remaining on the minimum portion of his sentence. *Id.* at 34-37. Consequently, Father will not be able to work towards any of his post-release goals for the next several years. *See id.*

Based on the foregoing, the evidence of record unquestionably shows that Father is not able to presently parent A.E.J. and will be unable to do so for the foreseeable future. *See A.R.*, 311 A.3d at 1112. Therefore, there

could be no finding that the orphans' court abused its discretion in finding that OCY presented clear and convincing evidence in support of termination pursuant to section 2511(a)(2). **See In re Adoption of S.P.**, 47 A.3d 817, 831 (Pa. 2012) (concluding that trial court did not abuse its discretion in terminating incarcerated father's parental rights under section 2511(a)(2), as his repeated incapacity caused child to be without essential parental care, control or subsistence, and father could not remedy the causes of the incapacity). As such, we agree with Attorney Kelley that this claim is frivolous.

We next consider whether Father's claim that the orphans' court abused its discretion by finding clear and convincing evidence to terminate Father's rights pursuant to section 2511(b). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Father argues that the orphans' court erred in this regard because termination would not serve the best interests of A.E.J. Father's Brief at 18-20. Father indicated at the termination hearing that he has nine other children and has been a constant part of all their lives. N.T., 5/21/2024, at 41.

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. **T.S.M.**, 71 A.3d at 267. "[T]he determination of the child's needs

and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *See Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the

discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Thus, a court must examine the matter from the child's perspective, placing his "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105. Our Supreme Court has cautioned that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at 268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105.

With respect to its needs and welfare analysis, the orphans' court explained its decision at the conclusion of the termination hearing:

> [OCY] has met its burden with regard to the termination of the parental rights to both parents. [Father], I understand your interest in your child's life and that you love your child, but the law does not allow for us to wait for a child's permanency. It would not be fair … to [A.E.J.] for me to do that. And, in fact, I would be putting your interest ahead of hers and that would be against what I'm supposed to do here.
>
> Unfortunately, your circumstances are self-created and the consequences of your own actions and they have led you to this point. But you're in a position where it's going to be, as you said, at least three years and [ten] months before you can get out of jail. That puts [A.E.J.] at … closer to six years old by the time you get out of jail, and that just wouldn't be fair for her to wait and not have that permanency and not have that family … that she certainly deserves as a child that young.

N.T., 5/21/2024, at 44-45.

Pristello testified that A.E.J. has developed a bond with her foster parents, and that she has also established sibling relationships with her foster parents' biological children. *Id.* at 22-23. In contrast, Pristello stated that A.E.J. shares no bond with Father and has only ever walked past him in court. *Id.* at 24. Indeed, Father admitted that he has only ever seen A.E.J. three times, and each instance was in court. *Id.* at 33. Pristello further testified that A.E.J.'s foster parents meet her developmental, physical and emotional needs and welfare. *Id.* at 23. She explained that A.E.J. therefore would not suffer any detriment if the orphans' court terminated Father's parental rights, as his previous and continued inability to parent A.E.J. requires a finding that the termination of his parental rights and freeing her for adoption best serve A.E.J.'s needs and welfare. *Id.* at 23.

Based on the record before us and the standard of review we must employ, there again can be no finding that the orphans' court abused its discretion. There was no evidence of any bond shared between A.E.J. and Father, and the record amply supports the finding that she is bonded with her foster parents and thriving in their care. *See K.T.*, 296 A.3d at 1113. Accordingly, we conclude that the orphans' court did not err in determining that A.E.J.'s developmental, emotional, and physical needs and welfare are best met by terminating Father's parental rights, and agree with Attorney Kelley that any contrary claim is frivolous.

Finally, our independent review of the record reveals no other non-frivolous issues that Father could raise on appeal. *See X.J.*, 105 A.3d at 4. We therefore grant Attorney Kelley's petition to withdraw and affirm the decree terminating Father's parental rights to A.E.J.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/3/2025